IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 25-cv-01369-GPG-KAS

JERALD W. MASON,

    Plaintiff,
v.

SCHOOL DISTRICT NO. 1 d/b/a DENVER PUBLIC SCHOOLS;
EAST HIGH SCHOOL; and
SHAWNE ANDERSON, as Assistant Principal of East High School, in his individual and
official capacities,

    Defendants.

---

# ORDER

---

Before the Court are Defendants' Motion to Dismiss (D. 15) and Motion to Strike Official

Capacity Claims From Defendant Shawne Anderson (D. 16).  The Court GRANTS the motion to

strike and GRANTS IN PART the motion to dismiss for the following reasons.

## I.  FACTS

This civil action arises from a school shooting at Defendant East High School.[1]  In January

2023, a student, A.L., applied and was admitted to East High School (D. 5 at ¶ 32).  A.L. had

previously been expelled from Overland High School in November 2021 after police found an

AR-15 assault rifle, two fully loaded magazines, and a zip-lock bag with spent shells (*id.* at ¶ 28).

On or about January 13, 2023, after A.L. was enrolled in East High School, Defendant Shawne

Anderson, the Assistant Principal, and other East High School staff completed a Threat Appraisal

---

[1] The Court draws the operative facts as set forth in the Amended Complaint and Jury Demand (D. 5).

1

for A.L. with A.L.'s father present (*id.* at ¶ 40). A safety plan was created for A.L. requiring him to meet with Mr. Anderson for a verbal "check-in" before his first class each day (*id.* at ¶ 41).

On Thursday, March 2, 2023, students at East High School reported to A.L.'s mother that A.L. had a gun in his pocket during class (*id.* at ¶ 45). Mr. Anderson learned of the incident and contacted A.L. to be searched (*id.* at ¶¶ 49–51). Rather than consenting to a search, A.L. fled East High School, and Mr. Anderson called the Denver Police Department for help (*id.*). Under Defendant Denver Public Schools's (DPS) policy, student misbehavior on school grounds involving a firearm requires mandatory submission for review for expulsion (*id.* at ¶¶ 52–54). Neither Mr. Anderson nor East High School initiated submission of the March 2 incident for review for expulsion (*id.* at ¶ 55). Instead, the following Monday, March 6, 2023, Mr. Anderson and East High School staff conducted a meeting with A.L. and his father during which A.L.'s safety plan was adjusted to require that Mr. Anderson conduct a daily search of A.L.'s backpack (*id.* at ¶¶ 57–59).

On March 23, 2023, A.L. entered East High School and asked Plaintiff Jerald Mason, a student dean at East High School, to see Mr. Anderson (*id.* at ¶ 69). Mr. Mason radioed Mr. Anderson, who did not respond (*id.* at ¶¶ 70–72). Eric Sinclair, the Dean of Culture at East High School, offered to take A.L. to the dean's office and wait for Mr. Anderson with A.L. (*id.* at ¶¶ 73–74). Moments later, Mr. Sinclair yelled for Mr. Mason (his middle name is Wayne) from the dean's office, "Wayne, Wayne, help me, help me!" (*id.* at ¶ 76). Mr. Mason ran into the room to find Mr. Sinclair wrestling with A.L. (*id.* at ¶ 77). A.L. shot Mr. Sinclair in the chest, abdomen, and leg, and he fell to the ground (*id.* at ¶ 79). A.L. then shot Mr. Mason twice in the chest at

point-blank range before running from the scene (*id.* at ¶¶ 81–82). Mr. Mason and Mr. Sinclair were rushed to a hospital in critical condition (*id.* at ¶ 83).

Mr. Mason brings three claims for violation of the Fourteenth Amendment and one claim for violation of the Claire Davis School Safety Act, C.R.S. § 24-10-106.3 (D. 5). He argues that Mr. Anderson's abandonment of his responsibility to search A.L. on the morning of March 23, 2023, and Defendants' implementation of an inadequate safety plan created the danger that A.L. would shoot Mr. Mason or other members of the East High School community. Defendants move to dismiss all claims, arguing that Mr. Mason does not adequately plead that they created the danger to Mr. Mason, Mr. Anderson is entitled to qualified immunity, the Claire Davis School Safety Act claim is barred by the Colorado Workers' Compensation Act, and East High School is not a proper defendant (D. 15). Mr. Anderson also moves to strike claims against him in his official capacity because, he argues, they are redundant of the claims against DPS (D. 16).

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo.

3

2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citation modified).

Qualified immunity is immunity from suit and not a mere defense to liability. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citation omitted). Thus, at this stage of the litigation, the plaintiff must (1) allege a violation of a constitutional right and (2) the right must be clearly established at the time of the defendant's alleged misconduct. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013). "The factual allegations must be specific and non-conclusory, and sufficient for a district court to determine that those facts, if proved, demonstrate the defendant is not entitled to qualified immunity." *Currier v. Doran*, 242 F.3d 905, 912 (10th Cir. 2001) (citation and internal quotations omitted). Asserting qualified immunity via a motion to dismiss "subjects a defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). When reviewing a motion to dismiss under the lens of qualified immunity, the court should not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (citation omitted).

### III.  ANALYSIS

**A.  East High School is Not a Proper Defendant**

Mr. Mason does not rebut Defendants' argument that East High School is an improper Defendant but rather asserts that the allegations against East High School should be construed as allegations against DPS (D. 17 at 15).  Defendants do not object to this (D. 23 at 16).  Therefore, the Court grants dismissal of East High School and construes Mr. Mason's allegations against it as allegations against DPS.

**B.  Shawne Anderson is Entitled to Qualified Immunity**

While the Court finds that Mr. Mason has alleged a violation of his constitutional right to be free from a state-created danger of gun violence in a school setting[2] (discussed below), it also finds that this right was not clearly established at the time of Mr. Anderson's alleged misconduct. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton,* 438 U.S. 635, 640 (1987)).  A plaintiff may show that a law was clearly established "by identifying an on-point Supreme Court or published Tenth Circuit decision" or by showing that "the clearly established weight of authority from other courts" found the law to be as the plaintiff maintains.  *Cox v. Glanz,* 800 F.3d 1231,

---

[2] Mr. Mason also asserts that he had a "right to be free from state-created dangers that create the risk of harm from third parties" (D. 5 at ¶ 127).  However, this characterization of his asserted right is too broad.  *See Mullenix v. Luna,* 577 U.S. 7, 12 (2015) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.  The dispositive question is whether the violative nature of *particular* conduct is clearly established.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal citations and quotations omitted)); *Est. of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016), *as amended on reh'g in part* (Aug. 12, 2016) ("Though the elements of the state-created danger test are clearly established, it also must be clear to which fact scenarios and government actors we apply the test").  The Court instead focuses its analysis on Mr. Mason's more particularized assertion of a right to be free from the danger of being shot while working in a school (*see* D. 5 at ¶¶ 94, 117, 138, 152).

1247 (10th Cir. 2015) (quotations omitted).  While "[t]he qualified immunity doctrine does not require a case exactly on point," it does require that "in the light of pre-existing law the unlawfulness must be apparent." *Weise v. Casper,* 593 F.3d 1163, 1167 (10th Cir. 2010) (internal citations and quotations omitted).

Mr. Mason identifies three cases as indicating the right asserted is clearly established (D. 17 at 14).  The first, *Armijo By and Through Chavez v. Wagon Mount Public School,* 159 F.3d 1253 (10th Cir. 1998), is too factually dissimilar from this case to meet the clearly established standard.  *Armijo* concerned a sixteen-year-old special education student shooting himself at home after a school administrator dropped him off.  159 F.3d at 1256–1257.  It did not concern gun violence on school premises or a threat posed by a student to another individual.  *See* 159 F.3d at 1257.  Thus, it is more aptly characterized as reflecting the right to be free from a state-created danger of gun violence at one's own hands and not particularly in a school setting.  The second and third cases, *Sutton v. Utah State School for the Deaf and Blind,* 173 F.3d 1226 (10th Cir. 1999), and *Currier v. Doran,* 242 F.3d 905 (10th Cir. 2001), did not concern gun violence at all and are therefore inapposite to this case.  The Court finds that it was not clearly established and Mr. Anderson is entitled to qualified immunity on Mr. Mason's federal Constitutional claims against him in his individual capacity.  As a result, claims 1 and 2 are dismissed.

### C. Claims Against Shawn Anderson in his Official Capacity are Stricken

Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Because Mr. Mason also names DPS as a defendant in his § 1983 *Monell* municipal liability claim, it is redundant to also name Mr. Anderson in his official capacity.  *Stump v. Gates*, 777 F. Supp. 808,

816 n.3 (D. Colo. 1991), *aff'd,* 986 F.2d 1429 (10th Cir. 1993) ("As the United States Supreme Court repeatedly has stated, a § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity. . . . Naming either is sufficient. Naming both is redundant."). Therefore, claims against Mr. Anderson in his official capacity are stricken pursuant to Federal Rule of Civil Procedure 12(f).

### D. Mr. Mason States a Fourteenth Amendment Claim Against DPS

Mr. Mason's only remaining § 1983 claim—claim 3—asserts that DPS's failure to implement sufficient policies and training "related to student searches and building access control at East High School" put Mr. Mason at risk of being shot by a student (D. 5 at ¶ 136). This claim is asserted as a *Monell* municipal liability claim (*id.* at 12). DPS argues that Mr. Mason fails to state a cognizable 14th Amendment substantive due process violation but does not address Mr. Mason's arguments regarding DPS's failure to train or implement sufficient policies. The Court limits its discussion to DPS's arguments and addresses only whether Mr. Mason has asserted an underlying Fourteenth Amendment claim.

The Fourteenth Amendment embodies, in part, "a substantive due process protection, which protects individuals from arbitrary acts that deprive them of life, liberty, or property." *Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991). Substantive due process protects persons from "deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Doe v. Woodward*, 912 F.3d 1278, 1300 (10th Cir. 2019). "While state actors are generally only liable under the Due Process Clause for their own acts and not for private violence, there are two recognized two exceptions to this rule: (1) the special relationship doctrine; and (2) the 'danger creation' theory." *Uhlrig v.*

*Harder,* 64 F.3d 567, 572 (10th Cir. 1995) (internal citation omitted).  Under the danger creation theory, a state may be liable to an individual for injuries caused by a third party where the state created the danger that harmed the individual.  *Id.*  To prevail on a claim under the danger creation theory, a plaintiff must establish that "(1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking."  *Currier v. Doran*, 242 F.3d 905, 918 (10th Cir. 2001).  The Court finds that Mr. Mason's complaint adequately pleads sufficient facts to support each element.

> *1.  DPS created the danger or increased Mr. Mason's vulnerability to the danger*
> *in some way.*

DPS does not acknowledge or briefs this element (*see* D. 15; D. 17).  Therefore, the Court will not conduct an in-depth analysis but rather concludes that Mr. Mason has sufficiently pleaded this element for the reasons stated in his response brief (*see* D. 17 at 11).

> *2.  Mr. Mason was a member of a limited and specifically definable group.*

DPS concedes (for the purpose of this Motion only) that Mr. Mason, as an educator at East High School, was a member of a limited and specifically definable group (D. 15 at 4).

> *2.  DPS's conduct put him and other members of that group at substantial risk of*
> *serious, immediate, and proximate harm.*

DPS does not address or contest that Mr. Mason pleads their conduct put him and other members of that group at substantial risk of serious harm – that risk being that A.L. would use a

gun at school (D. 5 at ¶ 139).  Instead, DPS argues that the complaint does not "allege violence was immediate and proximate" (D. 15 at 5).  DPS relies on *Castaldo v. Stone,* another school shooting Fourteenth Amendment case, for the proposition that a risk of future violence, even if "probably inevitable," is insufficient to satisfy the immediacy requirement.  192 F. Supp. 2d 1124 (D. Colo. 2001).

Aside from the fact that *Castaldo* is a non-binding, unpublished decision, it fails to carry the day because the facts are easily distinguishable from this case.  In *Castaldo,* the court held that the risk presented to a student shot by another student on school grounds was not immediate and proximate because thirteen months had elapsed from when an initial complaint regarding the eventual shooters was filed with the police and the shooting.  *Id.* at 1156.  First, whereas in *Castaldo*, thirteen months passed between an initial complaint being made to the defendants and the shooting – with no intervening incidents – only three weeks passed between Mr. Anderson being notified that A.L. had been seen with a gun at school on March 2 and the shooting on March 23.  Second, only three days (and zero school days) after the March 2 incident in which the facts indicate A.L. had a gun on his person, DPS allowed A.L. back to school with a woefully lacking safety plan and without notifying school staff of the situation.  Third, the students in *Castaldo* had not previously brought guns into the school, whereas evidence shows A.L. had a history of possessing and using guns and had brought a gun into a school on multiple occasions prior to shooting Mr. Mason, including just three weeks earlier.  For these reasons, the Court finds DPS's argument unpersuasive and determines that Mr. Mason has pleaded facts sufficient to show the risk of A.L. using a gun for violence at East High School was immediate and proximate.

### 3. *The risk of harm was obvious or known.*

DPS admits they "were aware the student had previously possessed firearms" and that his possession of a firearm was an "actual risk known to them" (D. 15 at 7).  However, they argue that "there are no facts alleged indicating the student had any propensity to use a firearm" [3] (*id.*).  To the contrary, the complaint clearly states facts indicating the risk that A.L. would use a firearm was both obvious and known.  For starters, common sense dictates that a student possessing a gun at school indicates an obvious risk that the student will use the gun.  To say otherwise is to undermine state laws and DPS policies aimed at protecting students by prohibiting minors from possessing guns and prohibiting guns in schools (*see id.* at ¶¶ 48–54).  In regard to the risk that A.L. specifically would use a gun, the complaint alleges that DPS was aware of the circumstances leading up to A.L.'s expulsion from Overland High School, including a determination from the police that he had been in possession of an AR-15 rifle with a round in the chamber (*id.* at ¶ 28).  The Court finds these facts sufficiently indicate that the risk that A.L. would use a gun at East High School was both obvious and known.

### 4. *DPS acted recklessly in conscious disregard of that risk.*

Recklessness in this context "includes an element of deliberateness—a *conscious* acceptance of a known, serious risk." *Archuleta v. McShan*, 897 F.2d 495, 499 (10th Cir. 1990). DPS argues that Mr. Mason fails to allege facts indicating recklessness because he does not demonstrate that Mr. Anderson was aware A.L. was looking for him on the morning of March 23, and DPS took steps to reduce the risk posed by A.L. (D. 15 at 8–9).

---

[3] The alleged risk in the complaint is that A.L. would use a firearm (D. 15 at ¶ 139 ("the obvious risk of AL shooting someone"), which is distinguishable from Defendant's characterization of the alleged risk as A.L.'s "propensity" to use a gun.

The Court finds that Mr. Mason adequately pleads recklessness. The complaint claims that despite DPS's knowledge of A.L.'s history with guns and the incident on March 2, they allowed A.L. to return to East High School with no discipline, no searches of his person, and no restrictions other than requiring that Mr. Anderson search A.L.'s backpack each morning. And DPS still did not inform East High School staff, such as Mr. Mason, of the precarious situation. Mr. Mason also argues that DPS decided to remove all police officers, known as "student resource officers" (SROs), from its schools in 2020, and DPS provides no facts in support of their statement that they took steps to "put in place safety policies to replace those officers" (D. 15 at 9).

All of these allegations show that DPS was aware of the risk posed by A.L. having a gun in the school and consciously chose to allow A.L. back to school without checking his person and without implementing adequate safety measures.

### 5. Defendants' conduct, when viewed in total, is conscience shocking.

"[T]o satisfy the 'shock the conscience' standard . . . the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig,* 64 F.3d at 573. "[W]hen applying this standard, [courts] 'bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety.'" *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (quoting *Uhlrig*, 64 F.3d at 574).

While conscience shocking is undoubtedly a difficult standard to satisfy, the Court finds that Mr. Mason has pleaded facts sufficient to support his allegation that DPS's conduct is

conscience shocking and to survive a motion to dismiss.  Viewing DPS's conduct in total and viewing the facts in a light most favorable to Mr. Mason, DPS appears to have exhibited a shocking disregard for the risk A.L. posed to an entire school full of children, faculty, and staff – as well as to himself.  He had been expelled from Overland High School for possessing guns and ammunition, he was suspected of having a gun on March 2, and no measures aside from a daily backpack search conducted by an untrained staff member were implemented to prevent him from bringing a gun into to the school.  It is not hard to imagine the terror that students and the parents of other students at East High School would have felt if they had known of this chain of events.  Especially in light of the information Mr. Mason provides regarding the death of JLGB by gun violence in front of East High School weeks earlier (D. 5 at ¶ 42), A.L.'s history at Overland High School, and DPS's decision to remove the SROs, Mr. Mason has shown that Defendants seem to have knowingly opened the door for a mass shooting and/or outbreak of gun violence at East High School.  This conduct is illogical, baffling, and plausibly conscience shocking.

**E.  Mr. Mason's Claire Davis School Safety Act claim is Barred by the Colorado Workers' Compensation Act**

DPS argues that the exclusive remedy provision of the Colorado Workers' Compensation Act (WCA), C.R.S. § 8-41-102, precludes Mr. Mason's Claire Davis School Safety Act (CDSSA) claim (D. 15 at 14–15).

The Court finds that Mr. Mason's injuries fall under the WCA, and his CDSSA claim is therefore precluded.  Under the WCA, an employee is entitled to compensation "[w]here the injury or death is proximately caused by an injury or occupational disease *arising out of* and in the course of the employee's employment and is not intentionally self-inflicted."  C.R.S. § 8–41–301(1)(c)

12

(emphasis added).   Injuries "result[ing] from an assault that is inherently connected to the employment or is attributable to neutral sources that are not personal to the victim or perpetrator" arise out of employment; however, "if the assault originates in matters personal to one or both of the parties," injuries are not considered as arising out of employment.  *Horodyskyj v. Karanian*, 32 P.3d 470, 478 (Colo. 2001).  As the *Horodyskyi* court explained, assaults originating in personal matters are "those in which the animosity or dispute that culminates in an assault is imported into the employment from [the] claimant's or tortfeasor's domestic or private life" and which "are unrelated to their respective work-related functions."  *Id.* at 477 (internal citations and quotation marks omitted).  Neutral source injuries, on the other hand, are those "not specifically targeted at a particular employee and [that] would have occurred to any person who happened to be in the position of the injured employee at the time and place in question."  *Id. See also City of Brighton v. Rodriguez*, 318 P.3d 496, 504 (Colo. 2014) ("[I]njuries stemming from neutral risks . . . "arise out of" employment because they would not have occurred but for employment.  That is, the employment causally contributed to the injury because it obligated the employee to engage in employment-related functions, errands, or duties at the time of injury.").

The facts indicate that A.L. most likely would have shot any employee who was in Mr. Mason's position, and Mr. Mason would not have been injured but for the fact that he was engaged in employment-related duties.  There is no evidence that A.L. targeted Mr. Mason specifically; rather, the shooting is more aptly classified as a randomly violent act of a mentally disturbed individual.  Nothing that Mr. Mason did or said and nothing about his person appeared to cause A.L.'s aggravation.  A.L. also shot Mr. Sinclair – the only other person in the room – during the same encounter.  Additionally, A.L. had a history with guns and subsequently took his own life

(D. 5 at ¶ 84), indicating that his decisions to bring a gun to school and to use the gun on Mr. Mason were a result of long-standing personal troubles.  Therefore, the Court finds that Mr. Mason's injuries originated from a neutral source, and the WCA exclusivity provision does bars his CDSSA claim.

Mr. Mason argues that the specific provisions of the CDSSA control over the general provisions of the WCA (D. 17 at 15).  The Court is not persuaded.  When presented with potentially conflicting statutes, Colorado courts "must adopt a construction that avoids or resolves potential conflicts, giving effect to all legislative acts, if possible."  *Huber v. Colo. Mining Ass'n*, 264 P.3d 884, 892 (Colo. 2011).  Defendants point out that the CDSSA and WCA can be reconciled by reading the CDSSA as waiving sovereign immunity for injuries resulting from privately motivated incidents of school violence, just not injuries resulting from incidents of school violence that were inherently connected to school employment or attributable to neutral sources (*see* D. 23 at 14). Prior to the CDSSA, school employees could not recover in tort for injuries resulting in privately motivated incidents of school violence because such claims were not waived under the Colorado Governmental Immunity Act (CGIA).  *See* C.R.S.  § 24-10-106.3(4) (waiving sovereign immunity under the CGIA for school districts for incidents of school violence).  The Court is thus obligated to accept this reading.  *See Huber,* 264 P.3d at 892; *Est. of Brookoff v. Clark*, 429 P.3d 835, 837 (Colo. 2018) ("[T]his court is 'not at liberty to carve out an exception' that is absent from a statute" (quoting *Packard v. Packard,* 519 P.2d 1221, 1222 (Colo. App. 1974))).

### IV.  CONCLUSION

Accordingly, Defendants' Motion to Dismiss (D. 15) is GRANTED IN PART as to the Claire Davis Act claim; all federal Constitutional claims against Defendant Shawne Anderson; and

Defendant East High School.  The Motion to Strike Official Capacity Claims From Defendant

Shawne Anderson (D. 16) is GRANTED.

DATED May 28, 2026.

BY THE COURT:

Gordon P. Gallagher
United States District Judge

15